PROPER, Plaintiff-Appellant, v. BUTCHER, Defendant-Appellee.

Ohio Appeals, Fourth District, Meigs County.

No. 197. Decided July 29, 1960.

*Messrs. Crow, Crow & Porter*, for plaintiff-appellant.
*Messrs. Halliday & Sheets*, for defendant-appellee.

For further history see *Omnibus Index* in bound volume.

GILLEN, P. J.   This case is one in which plaintiff-appellant seeks damages for the wrongful conversion of certain personal property by defendant-appellee.   The parties will be referred to as plaintiff and defendant in the same manner as they appeared in the Court below.

Plaintiff's amended petition alleges, in substance, that he was the owner of a complete Starr Spudder drilling rig, together with all necessary tools, lines, stems, bits, bailers, 200 feet of 8-inch casing, 200 feet of 6-inch casing, elevators, two G. M. C. Motors, one Hercules Motor, walking beam, Sampson post and mast, all of which composed a complete oil and gas drilling rig and tools.   That said drilling rig and tools were installed on defendant's 16 acre farm in Scipio Township, Meigs County, Ohio, in June, 1955, in accordance with a valid lease executed by the plaintiff and defendant.   That in March, 1957, defendant without the knowledge and consent of plaintiff, willfully, wrongfully, unlawfully and maliciously destroyed and burned a portion of the mast and other parts of said drilling rig and converted the remainder of said mast to his own use, using a part of the lumber from said mast to build a bridge on his property.   Plaintiff asked for compensatory damages in the sum of $10,000.00 and punitive damages in the sum of $10,000.00.

Defendant's answer admitted that the parties entered into a written lease dated April 27, 1955, and denied all other allega-

tions of the amended petition. Further answering, defendant averred that the parties entered into a written lease the terms of which, among other things, provided that plaintiff was to drill a well on said property for the production of oil and/or gas. That said lease was to remain in full force and effect for a period of one year from the date April 27, 1955, and so long thereafter as oil or gas, or either of them should be produced from the said lands. That plaintiff was to pay rental at the rate of $1.00 per acre, quarterly in advance, but that at no time did the plaintiff pay the defendant any royalties, although requests were made for same. That plaintiff entered upon the property in October, 1955, and began drilling operations about Thanksgiving, 1955, but did very little work at any time toward the completion and production of a well. That in June, 1956, after repeated requests for payment of royalty, defendant requested plaintiff to vacate and to remove any and all equipment from his property for the reason that the lease had term-terminated. That in April, 1957, plaintiff told defendant that he could have the drilling rig, tools and equipment if he would get them off the premises and told defendant to take the drilling rig and equipment and do whatever he pleased with it. That, on two separate occasions, plaintiff watched defendant moving the equipment off the premises and said nothing to him. That plaintiff broke and destroyed a bridge leading into his field at the time he entered upon the premises without repairing same.

The reply of plaintiff denied, generally, the averments of defendant's answer.

The issues were submitted to a jury resulting in a general verdict for defendant. Two special interrogatories submitted to the jury were answered in the affirmative as follows:

"1. Q. Did plaintiff give the drilling rig in question to the defendant? A. Yes.

"2. Q. Did the plaintiff abandon the drilling rig in question, and leave same on defendant's property? A. Yes."

All twelve members of the jury signed the verdict and interrogatories.

The record discloses that the parties entered into a written lease in April, 1955, as set forth in the pleadings and that plaintiff entered upon the premises and began drilling operations in

October, 1955. He testified he completed drilling the well to a depth of about 600 feet and that he left the drilling rig on the premises for the purpose of removing the outer casing until such time as he could arrange to have the well connected with the pipeline of The Ohio Fuel Gas Company. He did not pay the rental due under the terms of the lease and did not produce any oil or gas from the well. In fact, the evidence does not show whether it was or was not a producing well. On two or three occasions plaintiff and defendant had some conversation concerning the payment of royalty and the damage done to defendant's land. In March, 1957, approximately fifteen months after the drilling operation had ceased, plaintiff and defendant engaged in a heated controversy at which time defendant ordered plaintiff to remove the drilling equipment. Defendant claims that, upon that occasion, plaintiff told him to take it and do as he "damn" pleased with it. Another witness testified that plaintiff had previously offered to give him a one-half interest in the drilling rig if he would remove it from defendant's land. All of this, of course, is denied by plaintiff. Defendant desired to have the equipment moved since it interferred with his cultivating the 16 acre field. Following the March incident, defendant dismantled the drilling rig and removed it from his land. He used some of the lumber to restore a bridge leading to his farm which he claimed plaintiff had destroyed at the time he moved in. He burned the rest of the lumber claiming that it was too old and rotten to be of any value. He stored the remainder of the equipment on a farm nearby which he had under lease. When he was dismantling the drilling rig plaintiff passed by on two or three occasions without stopping to investigate or inquire about the situation. The rest of the equipment which defendant stored on the farm nearby remained there until August, 1958, when defendant hauled it to Athens and sold it for junk receiving about $300.00 for it.

A considerable portion of the testimony adduced at the trial related to the condition and value of the drilling equipment. Plaintiff had acquired title to the Starr Spudder rig which was 30 or 35 years old from some person living near Medina, Ohio, in 1953. He hauled the rig to his farm in West Virginia where it remained in storage until he moved it on de-

fendant's land in Meigs County in 1955. He traded other used equipment for it. Certain used parts from other drilling equipment were added to the Starr Spudder drill in order to make a complete drilling outfit. Plaintiff placed a valuation of $10,000.00 on the entire unit. Witnesses testifying for defendant who were experienced drillers had seen the drill rig and according to their testimony it was worn out and had only junk value. One of these witnesses had worked on the rig one day for plaintiff during the drilling operation. The verdict indicates that the jury believed this testimony. If the equipment had only junk value, that fact would have a direct bearing upon the intent of the plaintiff at the time he told defendant to take it and do with it as he "damn" pleased according to defendant's testimony. Plaintiff was engaged in other drilling operations in the area and it does not seem likely that he would permit drilling equipment of the value of $10,000.00 to remain idle for so long a time. It was the function of the jury to determine the credibility of the witnesses and the weight to be given their testimony.

It has been urged that the two special findings of fact were inconsistent and irreconcilable with the general verdict. To be inconsistent with the general verdict, it must appear that the special findings are irreconcilable, in a legal sense, with the general verdict; and to justify the court in setting aside or disregarding the general verdict on the ground that it is inconsistent with such special findings, the conflict must be clear and irreconcilable. See *Davis* v. *Turner*, 69 Ohio St., 101. Applying this rule to the case at bar it must be remembered that plaintiff's case is predicated on the theory of conversion. If there was a gift of the property there could be no wrongful conversion. The same holds true if there was an abandonment of the property. There is, of course, a difference between a gift and the doctrine of abandonment since the elements required to constitute each are entirely different. This apparent difference, however, does not mean that either of the special findings of fact is irreconcilable with the general verdict. In our opinion, either one is sufficient to support the verdict. The issues of fact were resolved by the jury in favor of defendant and a reviewing court is without authority to substitute its judgment for that of the jury.

We have carefully examined all of the assigned errors and find no error in the record prejudicial to plaintiff. The judgment of the Court below will, therefore, be affirmed.

Judgment affirmed.

RADCLIFF and COLLIER, JJ., concur.